UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:13-cv-00464-MOC

| | |
|---|---|
| **LEGAL NEWSLINE,** | ) |
| Plaintiff(s), | ) |
| Vs. | ) MEMORANDUM OF DECISION |
| | ) and ORDER |
| **GARLOCK SEALING TECHNOLOGIES LLC,** | ) |
| Defendant(s). | ) |

**THIS MATTER** is before the court on a number of motions and appeals from the Bankruptcy Court for the Western District of North Carolina, Honorable Judge George R. Hodges, Senior United States Bankruptcy Judge Presiding.

**FINDINGS and CONCLUSIONS**

### I. Group I: Appeals Related to Access to Court Proceedings and Filings

For a number of years, Judge Hodges has presided over the bankruptcy of Garlock Sealing Technologies LLC ("Garlock") and last year, in performance of those duties, conducted an estimation trial or hearing  The purpose of that hearing was to make a reasonable and reliable aggregate estimate of Garlock's liability for present and future mesothelioma claims. A central issue in the trial was whether consideration of Garlock's past mesothelioma settlements constituted a reliable method for estimating Garlock's present and future liability.

In the run up to making such determination, allegations surfaced that national counsel for mesothelioma victims had engaged in fraud, deceit, and other activities prohibited by the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, in

1

settling their clients' claims with Garlock. While claims of fraud and violations of RICO are common in federal civil litigation and seldom garner any attention from the public, the allegations in Garlock were of interest to the public, the press, and other still solvent enterprises that were subject to asbestos related claims and had dealings with these attorneys.

As a corollary to its appeal, Legal Newsline asks this court to determine the source of the right of access, be it the common-law presumption which favors access to all judicial proceedings and filings or the First Amendment guarantee of access. The public right of access has two components: first, the right of access protects the public's ability to oversee and monitor the workings of the federal courts, Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co., 203 F.3d 291, 303 (4th Cir.2000) (finding that "[p]ublicity of such records, of course, is necessary in the long run so that the public can judge the product of the courts in a given case."); and second, public access promotes the institutional integrity of the judiciary. United States v. Cianfrani, 573 F.2d 835, 851 (3d Cir.1978) (holding that "[p]ublic confidence [in the judiciary] cannot long be maintained where important judicial decisions are made behind closed doors …."). The Court of Appeals for the Fourth Circuit has long held that "the rights of the news media ... are coextensive with and do not exceed those rights of members of the public in general." In re Greensboro News Co., 727 F.2d 1320, 1322 (4th Cir.1984). Indeed, anyone, be they a reporter or a member of the general public, who "seek[s] and is denied access to judicial records sustains an injury." Doe v. Public Citizen, 749 F.3d 246, 263 (4th Cir. 2014). However, *Legal Newsline*'s request that this court make such determination as to *the source of the right of access* in the first instance would require fact finding that is not appropriate and perhaps not possible on appellate review. Indeed, it appears that the Fourth Circuit routinely remands that issue to the trial court for determination. Stone v. University of Maryland Medical System Corp., 855 F.2d 178, 181

(4th Cir. 1988) (holding that "[o]n remand, it [the district court] must determine the source of the right of access with respect to each document sealed. Only then can it accurately weigh the competing interests at stake.").

Prior to the estimation trial, *Legal Newsline* filed its Emergency motion to keep the Estimation Trial open to the public, which Judge Hodges denied July 31, 2013. *Legal Newsline* filed that motion in response to the bankruptcy court's earlier decision to close the courtroom to the media and the public during a witness's testimony. Such denial of the first motion resulted in *Legal Newsline*'s "first appeal," 3:13cv464, which asks whether the bankruptcy court's closure of the courtroom and denial of tis motion violated the substantive and procedural protections associated with the First Amendment right to attend court proceedings. As discussed below, the court agrees with Legal Newsline that such proceedings were improperly closed, will reverse the closure and the denial of *Legal Newsline's* motion, and remand the Order appealed from to Judge Hodges for further consideration in light of prevailing law, in the manner discussed below.

The issue raised in the second appeal is whether *Legal Newsline*'s First Amendment and common law interests in access to judicial documents requires disclosure of the evidence upon which the bankruptcy court relied in reaching its decision. After the estimation trial was conducted in the summer of 2013, the estimation Order entered in January 2014; thereafter, *Legal Newsline* filed its second motion with the bankruptcy court, this time asking Judge Hodges to unseal the trial transcript and exhibits on which his estimation Order was based. For cause, *Legal Newsline* argued that the public and the press had a right to review for itself the evidence that supported the court's conclusion. On April 11, 2014, Judge Hodges denied that motion as well as motions filed by other interested parties seeking to unseal that evidence and a second

3

round of appeals followed not just from Legal Newsline, but from other interested parties, in particular, solvent corporations facing similar asbestos related claims.

As to both challenged determinations, the court finds that, although done with the best judicial intentions of providing for the efficient administration of justice, Judge Hodges decision to seal the estimation hearing and maintain the seal as to judicial filings and the transcript of those proceedings after his estimation Order was contrary to the requirements of prevailing case law. When a document or a hearing is sealed, a court is required to "state the reasons for its decision to seal supported by specific findings, and the reasons for rejecting alternatives to sealing to provide this court with sufficient information for meaningful appellate review." Media General Operations, Inc. v. Buchanan, 417 F.3d 424, 431 (4th Cir. 2005) (internal quotation marks omitted and corresponding citations). In Nixon v. Warner Communications, Inc., 435 U.S. 589 (1978) the United States Supreme Court held, as follows:

> [i]t is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.... American decisions generally do not condition enforcement of this right on a proprietary interest in the document or upon a need for it as evidence in a lawsuit. The interest necessary to support the issuance of a writ compelling access has been found, for example, in the citizen's desire to keep a watchful eye on the workings of public agencies, and in a newspaper publisher's intention to publish information concerning the operation of government.

Nixon, 435 U.S. at 597–98 (citations and footnote omitted).

Clearly, the only basis relied on by the bankruptcy court other than judicial efficiency in its sealing determinations was the existence of protective orders and the representations by interested counsel that such documents were confidential. While designation of a document as "confidential" may well be the impetus for attorney requesting a court to seal a document, it is by no means an endpoint. Instead, the bankruptcy court was required to "show its work" by providing sufficient information concerning the reasons such exceptional relief was merited,

4

which would have provided a basis for meaningful appellate review by this court as provided under Media General. Such a determination should have included not only specific findings that supported the given reason for sealing, but reasons for rejecting less drastic alternatives to sealing. Tthe Confidentiality Order relied on by the district court accomplishes none of the Media General objectives and shifted the presumption that favors open courts to a presumption favoring the closure of proceedings based on confidentiality designations by counsel, improvidently shifting the burden to the public and the press to disprove the contours of a need to seal which has also not been described.

Put another way, an order providing that materials submitted to the court would be initially entered under seal and the courtroom closed to the public, subject to a challenge from the public or press, does not satisfy the requirements of Media General and its progeny. The Fourth Circuit has held, as follows:

> When presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements. As to the substance, the district court first must determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake. A district court must then weigh the appropriate competing interests under the following procedure: it must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing. Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review. This determination is one properly made in the first instance from the superior vantage point of the [lower court, rather than the appellate court].

Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 576 (4th Cir. 2004) (quotation marks and citations omitted).

This court is both familiar and complicit in the practice of entering lengthy protective orders in advance of parties engaging in Rule 26 discovery. Such orders typically give the

5

producing party *carte blanche* in designating documents "confidential," "highly confidential," and "highly confidential – attorney's eyes only." While this court routinely allows such protective orders, it has in place a Local Civil Rule which makes clearly that an attorney's designation of confidentiality does not result in automatic sealing. Protective orders serve legitimate purposes in both expediting discovery and protecting trade secrets, proprietary information, privileged communications, and personally sensitive data from inadvertent disclosure during the process of discovery; however, the confidentiality afforded under a Protective Order to discovery materials does not automatically extend to documents submitted to the court. At best, a Protective Order can require a party who desires to file a document marked confidential to seek an Order sealing or redacting that document before such filing.

While a court may seal any number of documents, proceedings, or applications for appropriate reasons, it simply cannot delegate that responsibility to the litigants by giving deference to protective orders. As a gatekeeper, a judge must consider sealing as the exception not the rule, <u>Va. Dep't of State Police v. Wash. Post</u>, <u>supra</u>, give the public notice of its intent to seal, require counsel to provide valid reasons for such extraordinary relief, and then explain that decision as well as the reason why less drastic alternatives were not employed. The reason is simple: the public and the press have a co-extensive right to view and consider documents tendered a judge and/or jury when a dispute in brought in the ultimate public forum, a courtroom. <u>Doe v. Public Citizen</u>, <u>supra</u>.

As mentioned above, the judges of this court, in conjunction with the public, attorneys, and members of Bar representing the press, developed Local Civil Rule 6.1, "Sealed Filings and Public Access," to dispose of requests for sealing in an orderly manner. That rule provides, as follows:

**LCvR 6.1     SEALED FILINGS AND PUBLIC ACCESS.**

**(A)**  *Scope of Rule*. This rule shall govern any request by a party to seal, or otherwise restrict public access to, any materials filed with the Court or utilized in connection with judicial decision-making. As used in this rule, "materials" shall include pleadings as well as documents of any nature and in any medium.

**(B)**  *Filing Under Seal.* No materials may be filed under seal except by Order of the Court, pursuant to a statute, or in accordance with a previously entered Rule 26(e) Protective Order.

**(C)**  *Motion to Seal or Otherwise Restrict Public Access*. A request by a party to file materials under seal shall be made by formal motion, separate and apart from the motion or other pleading sought to be sealed, pursuant to LCvR 7.1.

**(D)**  *Filing of an Unredacted Copy Allowed.* If necessary, information deemed confidential by a party may be redacted from the filed motion or brief and an unredacted version submitted under seal for *in camera* review. Materials deemed confidential may be submitted under seal for *in camera* review via cyberclerk.

**(E)**  *Public Notice.* No motion to seal or otherwise restrict public access shall be determined without reasonable public notice. Notice shall be deemed reasonable where a motion is filed in accordance with the provisions of LCvR 6.1(C). Other parties, interveners, and non-parties may file objections and briefs in opposition or support of the motion within the time provided by LCvR 7.1 and may move to intervene under Fed. R. Civ. P. 24.

**(F)**  *Orders Sealing Documents*. Orders sealing or otherwise restricting access shall reflect consideration of the factors set forth in LCvR 6.1(C). In the discretion of the Court, such orders may be filed electronically or conventionally and may be redacted.

**(G)** *Filings Subsequent to Entry of an Order Sealing Documents.* After an Order permitting the filing under seal has been entered, any materials filed pursuant to that Order shall be filed electronically with a non-confidential description of the materials filed. Administrative Procedures

**(H)** *Motions to Unseal.* Nothing in this Local Rule shall limit the right of a party, intervenor, or non-party to file a motion to unseal material at any time. Such a motion to unseal shall include a statement of reasons why the material should be unsealed and any change in circumstances that would warrant unsealing.

>  *(1) Case Closing*. Unless otherwise ordered by a Court, any case file or documents under Court seal that have not previously been unsealed by the Court shall be unsealed at the time of final disposition of the case.
>  *(2) Access to Sealed Documents*. Unless otherwise ordered by the Court, access to documents and cases under Court seal shall be provided by the Clerk of Court only pursuant to Court Order.

> Unless otherwise ordered by the Court, the Clerk of Court shall make no copies of sealed cases files or documents.
>
> **(I)** *Impact on Designation of Confidential Materials.* Nothing in this Local Rule shall limit the ability of parties, by agreement, to restrict access to discovery or other materials not filed with the Court or to submit motions pursuant to Fed. R. Civ. P. for a Protective Order governing such materials.

L.Civ.R. 6.1. As provided above, the rule contemplates that attorneys will designate materials as confidential, but makes it clear that such designation does not necessarily extend to materials "filed with the court." L.Civ.R. 6.1(I).

The parties appear to be in agreement that remand is appropriate and the parties have submitted various well-reasoned proposals to remedy the sealing issue. Garlock has provided the court with a two-page proposal for very specific instructions as to what procedure should be employed by the bankruptcy court on remand in determining what to unseal as well as the time frames for the parties to file objections. *Legal Newsline* has argued that the court should remand and direct the bankruptcy court to immediately lift the seal as the press and public have compelling First Amendment and common law interests in reviewing those materials. These are reasonable solutions, but the court finds the appropriate instructions on remand fall somewhere between the two proposals.

In ordering remand, this court is guided by the reasoning of the Court of Appeals for the Fourth Circuit in Stone v. Univ. of Md. Med. Sys. Corp., supra. In accordance with that decision, the court will reverse the Orders appealed from, remand those Orders and the motions underlying them for further consideration in light of this decision, restore subject matter jurisdiction over these proceedings to the bankruptcy court, and instruct the bankruptcy court to determine in the first instance the source of the right of access with respect to each document or the testimony of any witness as to which any party proposes or has proposed be sealed, give the

public notice of any such request to seal and a reasonable opportunity to challenge it, onsider any reasonable alternatives to sealing, all in accordance with In re Knight Publishing Co., 743 F.2d 231 (4th Cir. 1984) and then, if such materials are sealed, provide sufficient information supporting that decision for meaningful appellate review, all in accordance with Media General, supra.

## II. Group II: Withdrawal of the Reference

While understanding that the Group I cases concerning the sealing orders had little to do with the cases in Group II, which seeks withdrawal of the reference as to non-core proceedings, the court consolidated all the cases for hearing as understanding the issues presented by Group I informed decision in Group II. The court believes it was correct in that conclusion as the courtroom, packed with attorneys, did not empty when the court shifted its consideration to the Group II motions to withdraw the reference.

As mentioned, Group II seeks withdrawal of the reference to the bankruptcy court of non-core claims asserted by Garlock for common law and statutory tort claims against the lawyers who allegedly engaged in fraud and violations of RICO in settling their clients' mesothelioma claims. On January 10, 2014, Judge Hodges entered his estimation Order. In re Garlock Sealing Techs, LLC, 504 B.R. 71 (Bankr. W.D.N.C 2014). After hearing evidence from fifteen settled cases, Judge Hodges found that Garlock's settlements were not a reliable predictor of liability because misrepresentation had infected them:

> [T]he fact that *each and every one of them* contains such demonstrable misrepresentation is surprising and persuasive. More important is the fact that the pattern exposed in those cases appears to have been sufficiently widespread to have a significant impact on Garlock's settlement practices and results.

Id. at 85 (emphasis in the original). Judge Hodges went on to describe the plaintiffs' lawyers' conduct in these cases as forming a "startling pattern of misrepresentation." Id. at 86.

9

The finding has apparently lead the bankruptcy estate, *eo nominee* Garlock, to pursue civil claims against those lawyers to recoup funds they believe are due and owing to the bankruptcy estate based on tort. The parties are in agreement that such claims are non-core proceedings and that they could not be tried in the bankruptcy court without consent of all the parties, which is not forthcoming. While Garlock warns that the attorney defendants who are eager for this court to withdraw the reference will promptly move to transfer venue to their home districts, such possibility is of no moment as this court is at home not only with fraud and RICO claims, but with preliminary motions concerning appropriate fora. The court will, therefore, in accordance with 28 U.S.C. § 157(d), withdraw the reference as to each of the non-core actions and reference those proceedings to <u>one</u> United States Magistrate Judge for full pretrial case management consistent with this court's Order of Referral and the Local Civil Rules of this court.

## ORDER

**IT IS, THEREFORE, ORDERED** that as to cases forming "Group I" of this consolidated action (3:13cv464-MOC (Legal Newsline is appellant), 3:14-cv-00171-MOC (Ford Motor Company, Motion to Withdraw Ref.), 3:14-cv-00210-MOC (Ford Motor Company, Appeal), 3:14-cv-00212-MOC (Legal Newsline, Appeal), 3:14-cv-00214-MOC (Garlock Appeal), 3:14-cv-00215-MOC (Honeywell Appeal), 3:14-cv-00216-MOC (Insurance Companies' Appeal); 3:14-cv-00217-MOC (Volkswagen Appeal), 3:14-cv-00221-MOC (McKinnley/Everesst Insur. Appeal), 3:14-cv-00116-MOC (Simon Greenstone Motion to Withdraw Ref.), 3:14-cv-00118-MOC (Belluck &Fox Motion to Withdraw Ref. ), 3:14-cv-00130-MOC (Asbestos Attorneys Motion to Withdraw Ref.), and 3:14-cv-00137-MOC (Shein law Center Motion to Withdraw Ref.)),

**(1)** the Group I appeals seeking reversal of the bankruptcy court's sealing and exclusion Orders are **GRANTED** for the reasons discussed herein. To the extent such appeals seek relief beyond such determination, the appeals are otherwise **DENIED**;

**(2)** the Group I motions seeking to withdraw the reference are denied as **MOOT** as the impediment which has prevented relief below has been removed;

**(3)** all of the Orders of the bankruptcy court appealed from sealing evidence, hearings, transcripts, or filings, or excluding the press or the public from the hearing are **REVERSED;** such Orders and the motions underlying them are **REMANDED** for further consideration in light of this decision; subject matter jurisdiction over the proceedings appealed from is **RESTORED** to bankruptcy court; and, if any party moves upon remand to seal, the bankruptcy court is **INSTRUCTED** to determine in the first instance the source of the right of access with respect to each document or the testimony of any witness any party proposes or has proposed to be sealed, give the public notice of any such request to seal and a reasonable opportunity to challenge it, and then consider any reasonable alternatives to sealing, all in accordance with In re Knight Publishing Co., 743 F.2d 231 (4th Cir. 1984) and then provide sufficient information for meaningful appellate review as provided under Media General;

**(4)** all other motions pending in Group I are denied without prejudice as a matter of housekeeping; and

11

**(5)** all Group I cases are **SEVERED** from this consolidated action and upon administrative reopening are **DISMISSED** based on the disposition herein provided.

**IT IS FURTHER ORDERED** that as to cases forming "Group II" of this consolidated action (<u>Garlock Sealing Technologies LLC v. Simon Greenstone Panatier Bartlett, APLC</u>, 3:14cv116-MOC (W.D.N.C.), Adv. No. 14-AP-03037 (Bankr. W.D.N.C.), <u>Garlock Sealing Techs. LLC v. Belluck & Fox, LLP</u>, 3:14-cv-00118-MOC (W.D.N.C.), Adv. No. 14-AP-03036 (Bankr. W.D.N.C.); <u>Garlock Sealing Techs. LLC v. Waters & Kraus, LLP</u>, 3:14-cv-00130-MOC (W.D.N.C.), Adv. No. 14-AP-03038 (Bankr. W.D.N.C.), and <u>Garlock Sealing Techs. LLC v. Shein Law Ctr., Ltd.</u>, 3:14-cv-00137-MOC (W.D.N.C.), Adv. No. 14-AP-03035 (Bankr. W.D.N.C.),

**(1)** the Motions to Withdraw the Reference in each of those cases is **ALLOWED**, and the REFERENCE of such cases to the bankruptcy court is WITHDRAWN;

**(2)** the Clerk of Court is instructed to randomly draw <u>one</u> United States Magistrate Judge in the Charlotte Division and refer each Group II case to that judge for complete pretrial management in accordance with the court's Order of Reference and

**(3)** all Group II cases are **SEVERED** from this consolidated action and from each other and shall proceed under the civil district court case numbers previously assigned to them.

Signed: July 23, 2014

Max O. Cogburn Jr.
United States District Judge